Justice LEE,
concurring in part and concurring in the judgment:
24 I concur in the court's disposition of this case but disagree with its decision to reach out to address an issue that is both foreclosed by the posture of this appeal and unnecessary to the judgment. Specifically, I see no basis for opining, as the court does in paragraphs 11-15, on whether consideration of a victim's sexual predisposition is "necessary to the determination of guilt" under Utah Code section 76-5-406(11) or "defies the language and the logic of" that provision. Supra ¶¶ 13, 14.
125 The parties' failure to challenge the jury instructions in this case prevents us from reaching that question. Those instructions arguably made evidence of a victim's sexual predisposition pertinent to the issue of enticement. Supra ¶ 13 (quoting the jury instruction's definition of enticement as "consist[ing] of words intended to cause a person to do something that person would not otherwise do" (emphasis added)). And because the propriety of the jury instruction's definition of "entice" is not before us on appeal, we must accept that instruction as it operated in this case. Deciding the proper definition of "entice" under the applicable statute is accordingly beyond our reach. On this posture, we cannot and need not either "reject" or accept any one definition of "entice." Supra ¶¶ 13, 15).[1]
*1003 126 Moreover, the court's determination-that "under no definition" of entice would evidence of a victim's sexual naive-té/experience "be necessary to the determination of guilt," supra 11 13-is unnecessary to the resolution of the constitutional questions before us on appeal. The basis for the trial court's decision to arrest the verdict was the conclusion that evidence of prior sexual advances should have been admitted under Utah Rule of Evidence 412 because exelusion of the evidence violated Billings-ley's Confrontation Clause and due process rights. See Utah R. Evid. 412(a)(2), (b)(8) (stating that "evidence offered to prove a victim's sexual predisposition" is inadmissible in this type of case unless "exclusion would violate the defendant's constitutional rights"). Those constitutional questions have straightforward answers, neither of which requires us to establish acceptable parameters for the evidence required to prove enticement.
127 First, Billingsley argues that "bly denying [her] the opportunity to inquire into the alleged victims' prior sexual behavior and predisposition, ... the trial court unjustifiably lowered the State's burden of proof on lack of consent by enticement," thus violating her right to due process. This argument fails on its own terms because Billingsley was not denied that opportunity. On eross-exam-ination, Billingsley's counsel challenged M.M. by suggesting that he had made an inappropriate comment about Billingsley's breasts to a group of students. Her counsel also elicited testimony from D.P. that M.M.'s "hormones were always raging," a notion reiterated by her counsel in suggesting that M.M. was a "walking hormone ... up for everything" who was "looking for some action and thought he would get it with Ms. Billingsley." This testimony speaks to M.M.'s "prior sexual behavior and predisposition" just as much as the excluded evidence-what Billingsley describes as "M.M.'s flirtatious activity with a teacher." Because the jury heard this evidence, Billingsley cannot now successfully argue that the State was relieved of proving enticement.[2] Indeed, Billingsley's argument ultimately distills to a complaint that the jury 'failed to credit the evidence it heard about M.M.'s sexual predisposition; that argument does not implicate her due process rights in the slightest.
128 Billingsley's Confrontation Clause argument is similar and just as easily rejected. She contends that she was prevented from "queryling] the alleged victims about their prior sexual knowledge, experience, or behavior on cross-examination" or from "callling] defense witnesses regarding the same," which violated her rights under the Confrontation Clause. But, as noted above, Billingsley was not prevented from doing these things. Supra ¶ 27. The jury heard about M.M.'s past inappropriate remark about Billingsley and his status as a "walking hormone." The most that Billingsley can say is that she would have liked to introduce more and better evidence of this type. But "the Confrontation Clause guarantees an opportunity for effective eross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 678, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (internal quotation marks omitted). With this evidence in play, it was hardly *1004 "impossible" for Billingsley to confront M.M. with evidence of his sexual predisposition.
129 This is all we need say to resolve this case. That is not to say that I do not understand the court's desire to do more. Conditioning a sexual crime on the child-victim's sexual past and proclivitiee-as the jury instruction in this case seemed to do-is objectionable on many levels. In a case where that issue was squarely before us, I would join the court's analysis on that point. But this is not that case. I would resolve the issue presented in this appeal by deciding that Billingsley had a constitutionally sufficient opportunity to explore M.M.'s sexual predisposition, even absent the exeluded evidence.

. My point is not that a teenager with prior sexual experience categorically "cannot be enticed." Supra ¶ 14. Nor do I mean to suggest that the prosecution is required "to prove that the victim was not predisposed to engage in sexual activity of any kind" in order to establish enticement. Supra ¶ 14. I agree with the court that such a requirement is incompatible with the "language and the logic of the statute." Supra ¶ 14. If the propriety of the jury instruction were before us, I would reject Billingsley's argu *1003 ments on that score. It is not, however, and we should refrain from opining on that issue.

. Even if Billingsley had been denied this opportunity, I would reject her argument that such a denial lowered the State's burden of proof for two reasons: (1) The State was not burdened with proving that M.M. was a sexual innocent. True, the jury instruction frames enticement in terms of what the victim "would not otherwise do." But, sexual innocence, while certairily relevant, is not essential to the question of enticement, even under the definition the parties adopted in this case. I can imagine many factors that could be used to determine what a victim "would not otherwise do," and nothing in the instruction requires the jury to confine its inquiry to sexual predisposition. (2) Billingsley confuses the issue by relating the State's burden of proof to the type of evidence she presented. The State's burden remained the same no matter what evidence the defense presented. So, while the defense's evidence could have made it easier or harder for the State to meet its burden, that evidence did not alter the burden itself. In my view, the only argument available to Billingsley is that it would have been harder for the State to meet its burden had the excluded evidence been admitted. But that argument does not at all implicate due process.